282 U.S. 194 (1931)
FLORIDA ET AL.
v.
UNITED STATES ET AL.
BROOKS-SCANLON CORPORATION ET AL.
v.
SAME.
WILSON LUMBER COMPANY OF FLORIDA
v.
SAME.
Nos. 16, 17, and 18.
Supreme Court of United States.
Argued October 30, 31, 1930.
Decided January 5, 1931.
APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.
*196 Mr. Fred H. Davis, Attorney General of Florida, for the State of Florida et al.
Mr. Henry P. Adair, with whom Messrs. Charles E. Cotterill, August G. Gutheim, and H. Plant Osborne were on the brief, for the Brooks-Scanlon Corporation et al. Mr. J.V. Norman for the Wilson Lumber Company of Florida.
Mr. Robert C. Alston, with whom Messrs. F.B. Grier, Carl H. Davis, and W.E. Kay were on the brief, for the Atlantic Coast Line Railroad Company.
*202 MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.
The State of Florida and the members of its Railroad Commission (appellants in No. 16) brought suit in the District Court to restrain the enforcement of that part of an order of the Interstate Commerce Commission which dealt with certain intrastate rates of the Atlantic Coast Line Railroad Company in Florida. The order, made August 2, 1928, required the Railroad Company to establish carload rates for logs (except walnut, cherry, and cedar) in intrastate commerce "within the State of Florida" which should be the same as the rates prescribed by the Interstate Commerce Commission as reasonable for transportation in interstate commerce from points in the northern portion of Florida to destinations in Georgia. The order in that respect was assailed as being outside the scope of the issues raised in the proceeding in which the order was entered and without substantial evidence to support it, and as extending beyond the statutory authority of the Commission and the limits of federal power under the Constitution.
Suits for similar relief were brought by the Brooks-Scanlon Corporation and other corporations (appellants in No. 17) and by the Wilson Lumber Company (appellant in No. 18), manufacturers and shippers of lumber in Florida. The Public Service Commission of Georgia was permitted to intervene, and the three suits were consolidated *203 and heard before a court of three judges as required by the applicable statute.
The court was of the opinion that the order of the Commission touching intrastate rates could be construed as being limited to points of origin on the Atlantic Coast Line Railroad in the northern part of Florida, as the Commission had confined its order to these points of origin in fixing interstate rates. Taking the view that, if construed so as to apply to intrastate rates throughout the State, the order would probably be invalid, the court sustained it upon the narrower construction. Decrees were entered accordingly in January, 1929, dismissing the bills. 30 Fed. (2d) 116.
Thereupon the Interstate Commerce Commission amended its order by inserting additional exceptions of logs, and also with respect to intrastate rates, "for the purpose of clarification" by substituting for the phrase "within the State of Florida" the words "within and throughout the entire State of Florida, without exception." Petitions for rehearing and for leave to file supplemental bills were then presented to the District Court and were granted. The Atlantic Coast Line Railroad Company was allowed to intervene. On the rehearing, both the original and supplemental bills were dismissed. 31 Fed. (2d) 580. The court upheld the amended order of the Commission as to intrastate rates, in its statewide operation, not "because of undue prejudice to shippers and localities, or because of undue discrimination against the particular interstate commerce" in the described logs, but solely upon the ground that the order was aimed at a discrimination "against general interstate commerce," caused by intrastate rates which were so low as to throw an undue burden upon the interstate revenues of the carrier.
From the decrees entered accordingly the present appeals are brought.
*204 The proceeding before the Interstate Commerce Commission was begun by the filing of a complaint by the Georgia Public Service Commission against the Atlantic Coast Line Railroad Company. The complaint stated that its object was to secure reasonable rates on logs from points on the Railroad Company's line within Florida to all destinations on its line in Georgia, and to remove any unjust discrimination found to exist as provided in the Interstate Commerce Act. The complaint alleged that there was competition between mills and consumers in Georgia and those in Florida in the purchase and transportation of logs from points in Florida to destinations in Georgia. The intrastate log rates of that railroad in Florida, and its interstate log rates between Florida and Georgia, for distances up to 170 miles were set forth, and it was alleged that the interstate rates greatly exceeded the intrastate rates for like distances upon traffic moving under substantially similar conditions. The complaint charged that the interstate rates were unjust and unreasonable in violation of section 1, were unjustly discriminatory in violation of section 2, and were unduly prejudicial to the interstate shipper and preferential in favor of the intrastate shipper in violation of section 3, of the Interstate Commerce Act. It was also charged that the carrier's intrastate rates in Florida gave unreasonable preference to intrastate shippers in that State and were unduly prejudicial to interstate shippers in Georgia, causing an unjust discrimination against interstate commerce in violation of section 13 of the Act. The complainants asked for an order requiring the Atlantic Coast Line Railroad Company to desist from the described violations of the Act, and prescribing just, reasonable, and non-discriminatory interstate rates to be charged by the defendant carrier for the transportation of carload shipments of logs from all Florida points to all destinations in Georgia, and that the measure of such rates should be no higher than *205 those concurrently in effect for the same kind of property moving in intrastate commerce in Florida.
The State of Florida was notified of the proceeding, and the Florida Railroad Commission appeared in defense of the Florida intrastate rates. There were a number of interveners, including shippers of logs in intrastate commerce in Florida, Georgia lumber companies, and railroad companies operating in Florida and between Florida and Georgia, and all parties were fully heard.
In its report, the Interstate Commerce Commission stated that while the complainant assailed the rates from all Florida points, the record showed that, so far as interstate rates were concerned, relief was desired only with respect to the rates on logs "from that portion of Florida lying north of and including Jacksonville, Gainesville, Burnett's Lake, and High Springs," described as north Florida, "to destinations in Georgia for distances not exceeding 170 miles." The Commission pointed out that the Florida intrastate rates under attack were published for carload lots for 170 miles and less. The history of these rates was reviewed. With certain modifications and extensions, they were what was generally known as the "Cummer scale," which had originally been established by contract between a predecessor railroad company and a lumber company. This contract, the obligations of which were assumed by the Atlantic Coast Line Railroad Company, expired in 1918 and was not renewed. Meanwhile, in 1914, the Railroad Company had entered into a similar contract with the predecessor in interest of the intervener Brooks-Scanlon Corporation, and this contract was to continue in effect until certain timber, tributary to the line of the railroad, had been transported. Accordingly, the Railroad Company filed schedules with the Florida Railroad Commission extending the Cummer scale for described distances. The State Commission refused to permit the proposed rates to become effective because *206 they were applicable only on trainloads and were not available to all shippers. That Commission further advised the Railroad Company that the rates were too low and such as might be deemed confiscatory. The rates were republished to apply on carloads over all of the Company's lines in Florida. These rates, extended with respect to distances and modified by certain increases and reductions, have been continued by the Railroad Company for the purpose of complying with its contractual obligations and not because it has considered the scale to be a proper one for general application on intrastate traffic within Florida.
While not admitting that the interstate rates were unreasonable, the Railroad Company submitted to the Interstate Commerce Commission a proposal for their revision. The Commission made a tabular comparison of the existing interstate and intrastate rates and the proposed interstate rates from north Florida, and after a further statement of the evidence concluded that the interstate rates thus proposed were reasonable.
The Commission then made the following findings as to interstate and intrastate rates:
"We find that the interstate rates on logs, except walnut, cherry, and cedar, in carloads, from points on defendant's lines in Florida north of and including Jacksonville, Gainesville, Burnett's Lake, and High Springs, to destinations on its lines in Georgia for distances not exceeding 170 miles are, and for the future will be, unreasonable to the extent that they exceed, or may exceed, the following distance scale of rates in cents per 100 pounds, minimum weight 40,000 pounds, which rates we find are and will be reasonable: [inserting schedule] . . .
"We further find that the Florida intrastate rates assailed, which are lower than the interstate rates herein found reasonable for corresponding distances, result, and *207 will result, in undue preference and advantage of shippers of intrastate traffic within the State of Florida, in undue prejudice to shippers of interstate traffic from points in the State of Florida to points in the State of Georgia, and in unjust discrimination against interstate commerce.
"We further find that said undue preference and advantage, undue prejudice, and unjust discrimination can and should be removed by the establishment of rates for intrastate application within Florida which shall correspond with the rates herein found reasonable for interstate application from Florida to Georgia.
"We further find that whether the aforesaid rates pertain to transportation in interstate commerce or to transportation in intrastate commerce the transportation services in each instance are performed by defendant under substantially similar circumstances and conditions."
The order of the Commission, entered upon this report, after prescribing the interstate rates from northern Florida to Georgia, continued with respect to intrastate rates in Florida as follows:
"It is further ordered, That said defendant be, and it is hereby notified and required to cease and desist from practicing the undue preference and advantage, undue prejudice, and unjust discrimination found in said report to exist in the relation of intrastate and interstate rates and to establish, put in force, and maintain rates for the transportation of logs, except walnut, cherry, and cedar, in carloads, minimum weight 40,000 pounds, in intrastate commerce within the State of Florida which shall be the same as those prescribed in the next preceding paragraph hereof as reasonable for transportation in interstate commerce from points in the State of Florida to destinations in the State of Georgia."
This order, as already stated, was amended so as definitely to provide that the requirement as to intrastate *208 rates should apply throughout the entire State of Florida, without exception. In making this amendment there was no further report or finding of the Commission.
We agree with the conclusion of the District Court that, on the facts that have been found by the Commission, the order with respect to intrastate rates in its statewide application cannot be sustained by reason of a proper determination of undue prejudice "as between persons or localities in intrastate commerce on the one hand and interstate . . . commerce on the other hand." Interstate Commerce Act, sec. 13 (4). The limitation of the Commission's finding as to interstate rates, and of the order prescribing them, to transportation from points in the northern part of Florida to points in Georgia, defined the interstate commerce which was deemed to be concerned. All of this commerce was potential, no actual movement from Florida to Georgia having been shown. It would be an extreme and unwarranted assumption that to protect this interstate commerce from unjust discrimination as between persons or localities, it was necessary to alter the existing rates for the transportation of logs between all points whatever within Florida. Such a conclusion would not only require evidence to support it but findings of appropriate definiteness to express it. Illinois Central Railroad Company v. State Public Utilities Commission, 245 U.S. 493, 507, 508; Railroad Commission of Wisconsin v. Chicago, Burlington & Quincy Railroad Company, 257 U.S. 563, 579, 580; New York v. United States, 257 U.S. 591, 600. The District Court, again examining the record upon the rehearing, reaffirmed its opinion that there was no such evidence, and it is sufficient on this appeal to observe that there are no findings of proper explicitness to that effect. Recognizing that the statewide order of the Commission as to intrastate rates was upheld only because the intrastate rates were deemed to *209 be so low to cause "undue discrimination against the carrier's general interstate commerce," the Government and the Commission have addressed their argument before this Court to the defense of the order upon that ground.
Dealing with the order in this aspect, we may briefly dismiss the appellants' preliminary objections in relation to the scope of the proceeding and the adequacy of the hearing before the Commission. As the Florida Railroad Commission appeared in defense of the intrastate rates, and the Railroad Company, the rates of which were in question, and other parties in interest, both shippers and carriers, were heard, the question now presented relates to the substance of the determination of the Commission and its support in the evidence rather than to mere matters of pleading and procedure. In making its order, the Commission could exercise all the authority conferred by the Interstate Commerce Act for the purpose of removing such unjust discrimination as was found to exist. If the Commission had made adequate findings supported by evidence upon the point under consideration, we should not be disposed to conclude that the order must be upset because of the manner in which the proceeding was initiated or of the generality of the allegations of the complaint.
Nor do we find that the order exceeds the authority of the Commission in the view that the intrastate rates under consideration were not "made or imposed" by authority of the State within the meaning of section 13 (3) of the Act. While the "Cummer scale" of rates was not prescribed by the Florida Railroad Commission and was not the result of any affirmative action on its part, these rates were maintained in intrastate commerce subject to the authority of the State and were published as required by its laws. These rates may thus be regarded as made by the authority of the State and within the purview of the Act unless its provisions disclose an intention to exclude *210 intrastate rates of this sort. But it is clear that the fundamental purpose of the Congress in enacting section 13, subdivisions (3) and (4), was to reach intrastate rates that were found to result in unjust discrimination against interstate commerce. It was not the fact that the rate was affirmatively prescribed by the State, but that it was maintained as an intrastate rate, and as such was inimical to the proper interests of interstate commerce, that led the Congress to give to the Interstate Commerce Commission express authority to take cognizance of that rate and to prescribe the intrastate rate that should be charged thereafter in order to remove the undue discrimination. See Board of Railroad Commissioners v. Great Northern Railway Company, 281 U.S. 412, 424-428. The provision of section 13 (3) for notice to, and conference with, the authorities of the State, is important not only where the rates have been prescribed by the State, but also where they are in force with the permission of the State and, as intrastate rates, would otherwise be subject to the jurisdiction of the State. To hold, as some of the appellants urge, that there can be no adjustment of intrastate rates by the Interstate Commerce Commission so far as may be needed to protect interstate commerce until the State itself has first "sat in judgment on the issue of the lawfulness of those intrastate rates" would be to impose a limitation not required by the terms of the statute and repugnant to the grant of authority.
The power of the Congress to authorize the Interstate Commerce Commission to establish intrastate rates in order to remove an unjust discrimination against interstate commerce is not open to dispute. Houston, East & West Texas Railway Company v. United States, 234 U.S. 342; Illinois Central Railroad Company v. State Public Utilities Commission, supra; Railroad Commission of Wisconsin v. Chicago, Burlington & Quincy Railroad Company, supra; Arkansas Railroad Commission v. Chicago, *211 Rock Island & Pacific Railroad Company, 274 U.S. 597; Alabama v. United States, 279 U.S. 229. In the exercise of this power, the Congress has given to the Commission authority not only to remove an undue prejudice as between persons or localities, but to establish a statewide level of intrastate rates when this is found to be necessary to accomplish the purpose of the statute. In construing the statute this Court has held that the general provision of section 13 (4) prohibiting "unjust discrimination against interstate commerce" and authorizing the Commission to establish intrastate rates to prevent such discrimination, is to be read in connection with section 15a, both of which were added by Transportation Act, 1920 (secs. 416, 422, 41 Stat. 484, 488). There is what this Court has called a "dovetail relation" between the two provisions. The authority granted by section 13 (4) is thus to be considered in the light of the affirmative duty of the Commission to fix rates and to take other important steps to maintain an adequate national railway system.
As intrastate rates and the income from them must play a most important part in maintaining such a system, the effective operation of the Act requires that intrastate traffic should pay "a fair proportionate share" of the cost of maintenance. And if there is interference with the accomplishment of the purpose of the Congress because of a disparity of intrastate rates as compared with interstate rates, the Commission is authorized to end the disparity by directly removing it. Railroad Commission of Wisconsin v. Chicago, Burlington & Quincy Railroad Company, supra; New York v. United States, supra (pp. 585, 586).
The question in the present cases, then, is not one of authority, but of its appropriate exercise. The propriety of the exertion of the authority must be tested by its relation to the purpose of the grant and with suitable regard to the principle that whenever the federal power is exerted within what would otherwise be the domain of state *212 power, the justification of the exercise of the federal power must clearly appear. Illinois Central Railroad Company v. State Public Utilities Commission, supra. The Commission has no general authority to regulate intrastate rates and the mere existence of a disparity between particular rates on intrastate and interstate traffic does not warrant the Commission in prescribing intrastate rates. Arkansas Railroad Commission v. Chicago, Rock Island & Pacific Railway Company, supra. If the action of the Commission is not simply for the removal of undue prejudice against interstate commerce as between persons or localities, and the Commission undertakes to prescribe a statewide level of intrastate rates in order to avoid an undue burden, from a revenue standpoint, upon the interstate carrier, there should be appropriate findings upon evidence to support an order directed to that end. Thus, in Railroad Commission of Wisconsin v. Chicago, Burlington & Quincy Railroad Company, supra (at p. 566) where the question related to the general level of intrastate passenger fares, there were findings as to the effect of the maintenance of the intrastate fares upon the revenues of the carriers, warranting the ultimate finding of undue discrimination against interstate commerce as a whole. Similar facts were shown in New York v. United States, supra (at p. 601). In the present instance, the Commission did not undertake to establish a statewide level of rates for the interstate transportation of logs, and in order to sustain the statewide order as to intrastate rates (as one needed to avoid an undue burden on the revenues of the carrier and a consequent interference with the maintenance of an adequate transportation system) it must appear that there are findings, supported by evidence, of the essential facts as to the particular traffic and revenue, and the effect of the intrastate rates, both as existing and as prescribed, upon the income of the carrier, which would justify that conclusion.
*213 In the paragraph, which we have quoted, containing the ultimate finding of the Commission with respect to the unjust discrimination caused by the existing intrastate rates as between persons and localities, there is a concluding clause that the intrastate rates result "in unjust discrimination against interstate commerce." This general statement in the language of the statute, neither standing alone nor taken in its context, could be regarded as sufficient to support a statewide order from the standpoint of income, in the absence of supporting findings of fact as to the revenue from the traffic in question.
In its report, the Commission stated that the Florida Railroad Commission, and the interveners from that State, had contended that the intrastate rates were remunerative to the carrier. The State Commission introduced a cost study to support its contention, and the carrier also submitted evidence as to the cost of transporting logs on its line. The Interstate Commerce Commission said that both cost studies were based on "arbitrary assumptions" and that neither could be accepted "to show the approximate actual cost of transporting logs in single carloads intrastate throughout Florida." The Commission made a comparison of "present interstate and intrastate rates and the proposed interstate rates from north Florida in cents per 100 pounds, and the earnings thereunder per car of 50,000 pounds for distances to 170 miles." The "earnings" thus set forth were merely the amounts receivable per car for the given number of pounds under the rates for the prescribed distances. The Commission also stated that the carrier had shown that the earnings under the Florida intrastate rates on logs were materially lower than the earnings under the interstate rates from Florida to Georgia on brick, sand, lime and cement. Comparing the Florida intrastate rates on logs with other intrastate rates and with interstate rates, the Commission reached the conclusion that the intrastate rates assailed were less than reasonably compensatory.
*214 But to justify the Commission in the alteration of intrastate rates, it was not enough for the Commission merely to find that the existing intrastate rates on the particular traffic were not remunerative or reasonably compensatory. The authority to determine the reasonableness per se of intrastate rates lay with the state authorities and not with the Interstate Commerce Commission. In dealing with unjust discrimination as between persons and localities in relation to interstate commerce, the question is one of the relation of rates to each other. In considering the authority of the Commission to enter the state field and to change a scale of intrastate rates in the interest of the carrier's revenue, the question is that of the relation of rates to income. The raising of rates does not necessarily increase revenue. It may in particular localities reduce revenue instead of increasing it, by discouraging patronage.[1]Railroad Commission of Wisconsin v. Chicago, Burlington & Quincy Railroad Company, supra. The Commission stated in its report that witnesses for the Florida interveners had testified "that any material increase in the Florida intrastate rates would either cause them to move their plants to the timber or abandon operations," and that in either event the carrier would lose considerable traffic.
The Commission made no findings as to the revenue which had been derived by the carrier from the traffic *215 in question, or which could reasonably be expected under the increased rates, or that the alteration of the intrastate rates would produce, or was likely to produce, additional income necessary to prevent an undue burden upon the carrier's interstate revenues and to maintain an adequate transportation service.
The question is not merely one of the absence of elaboration or of a suitably complete statement of the grounds of the Commission's determination, to the importance of which this Court has recently adverted (The Beaumont, Sour Lake & Western Railway Company v. United States, ante, p. 74), but of the lack of the basic or essential findings required to support the Commission's order. In the absence of such findings, we are not called upon to examine the evidence in order to resolve opposing contentions as to what it shows or to spell out and state such conclusions of fact as it may permit. The Commission is the fact-finding body and the Court examines the evidence not to make findings for the Commission but to ascertain whether its findings are properly supported. If the facts as to intrastate transportation of logs in Florida are such as to justify an order as to intrastate rates in order to end an unjust discrimination as against interstate commerce either as between persons and localities, or because of an undue burden upon the revenues of the carrier, the Interstate Commerce Commission is still at liberty, acting in accordance with the authority conferred by the statute, to make such determination as the situation may require.
We conclude that the portion of the order of the Commission which is now under review, with respect to intrastate rates, is not supported by the findings of the Commission and this part of the order must be set aside.
Decrees reversed.
NOTES
[1] In the Florida Fertilizer Case, 151 I.C.C. 602, the Interstate Commerce Commission, in refusing to order an increase in the Florida intrastate rates on fertilizer, said: "Furthermore, it is not certain that if the Florida intrastate rates were increased to the interstate level, additional revenue would accrue to the carriers, for if the prophecies of the interior plants and of the Florida commission are justified, practically all shipments would be made from the ports with the result that the total charges would probably be no greater than they now are."