STATE OF TEXAS et al. v. UNITED
STATES et al.

Civ. No. 4004.

United States District Court
W. D. Oklahoma.

Jan. 26, 1949.

VAUGHT, Chief Judge, dissenting.

———◆———

Sidney M. Cook and Charles D. Egan, Shreveport, La., for Libbey-Owen-Ford Glass Co.

Welles, Kelsey, Fuller, Cobourn & Harrington, Toledo, Ohio, and James F. Lawrence, Tulsa, for Owen-Illinois Glass Co.

Arnold Boyd, New York City, and Ed P. Byars, Ft. Worth, Tex., for Knox Glass Bottle Co.

A. W. Gilliland, Oklahoma City, Okl., for interveners.

C. B. Bee, Corporation Commission, State of Okla., Oklahoma City, Okl., Joe

G. Fender, Houston, Tex., for Southwestern Rail Carriers.

Price Daniel, Atty. Gen. of Texas, Bolivar E. Kemp, Jr., Atty. Gen. of Louisiana, A. W. Gilliland, Oklahoma City, Okl., Edward Dumbauld, Sp. Asst. to Atty. Gen., Robert E. Shelton, U. S. Atty., Oklahoma City, Okla., and Daniel H. Kunkel, Interstate Commerce Commission, Washington, D. C., for interveners.

Before MURRAH, Circuit Judge, VAUGHT, Chief Judge and CHANDLER, Jr., District Judge.

PER CURIAM.

This is a suit under the Urgent Deficiencies Act, 38 Stat. 208, 28 U.S.C.A. §§ 43–48 [1], to annul and set aside an order of the Interstate Commerce Commission, prescribing intrastate freight rates on dense soda ash, from points of production at Corpus Christi, Texas, to Waco and Palestine, Texas, where it is used as a raw product in the manufacture of glass products; and from points of production at Lake Charles and Baton Rouge, Louisiana, to Shreveport, Louisiana, where it is also used in the manufacture of glass products.

The order, dated May 25, 1948, was made, after hearing, on complaint of the Corporation Commission of Oklahoma, and the Public Service Commission of Arkansas, on behalf of glass manufacturers in those States, who alleged that the state-prescribed intrastate freight rates on the soda ash from the points of production to points of manufacture within the States of Texas and Louisiana, were preferential of the local glass manufacturers, and prejudicial to competing manufacturers in the States of Arkansas and Oklahoma. The shipments from Corpus Christi to Palestine and Waco, Texas, carried a state-prescribed rate of 19 cents per cwt. in carload lots, minimum weight 100,000 pounds per car. Shipments from Lake Charles and Baton Rouge to Shreveport, carried a state-prescribed rate of 17 cents per cwt. in minimum carload lots of 100,000 pounds. The interstate rates from the same producing points in Texas and Louisiana to the manufacturing points in Arkansas and Oklahoma, carried a group rate of 31 cents per cwt.

The Commission's order is based upon its findings and report, entered March 3, 1947, which pertinently recites that:

"2. That the rates assailed to the complaining points [Fort Smith, Arkansas, and Ada, Blackwell, Henryetta, Okmulgee, Poteau, Sand Springs and Sapulpa, Oklahoma] and Palestine, Waco, and Shreveport, Louisiana, are, and for the future will be, unduly prejudicial and preferential and unjustly discriminatory against the interstate traffic of the complaining manufacturers in favor of glass manufacturers at such other points to the extent that they bear a relation less favorable to the former and more favorable to the latter than is reflected by the prescribed rate of 31 cents to the complaining points plus the increase authorized December 20, 1946, and rates 4 cents higher than the present rates to Palestine, Waco, and Shreveport, plus a like increase of 20 per cent, and that such preference, prejudice and discrimination as between interstate and intrastate commerce is caused in part by the maintenance of relatively low intrastate rates from North Baton Rouge and Lake Charles to Shreveport and from Corpus Christi to Palestine and Waco the extent that such intrastate rates are below those prescribed herein."

The effect of this finding and subsequent order of May 25, 1948, was to require the respondent rail carriers to increase their freight charges on dense soda ash from 17 cents to 21 cents on intrastate movements from North Baton Rouge and Lake Charles to Shreveport, and from 19 cents to 23 cents on intrastate movements of dense soda ash from Corpus Christi to Palestine and Waco. The Commission also found that the interstate rates to manufacturing points in Oklahoma and Arkansas were unreasonably high, and ordered them to be reduced, but no attack is made on that part of the order. Following the entry of said report and order of March 3, 1947, petitions for rehearing and reconsideration were filed with the Commission and denied by the entire Commission by order of September 4, 1947.

---

[1] See 1948 Revised Judicial Code, 28 U.S.C.A. §§ 1253, 1398, 2101, 2284, 2321–2325.

The Railroad Commission of Texas, and the Public Service Commission of Louisiana, denied the carriers' application to increase the intrastate rates in conformity with the order of the Interstate Commerce Commission, and brought this suit, contending that there is no substantial evidence tending to show that the intrastate rates assailed are unreasonably low per se; that on the contrary, it is shown that these rates are fair and compensatory in comparison with rates of other comparable commodities for the same or similar distances. And second, it is contended that rate disparity alone does not justify a finding of undue or unreasonable preference or prejudice, but such disparity must result in injurious competition to the complaining glass manufacturers in Oklahoma and Arkansas, and that there is no such evidence in this case.

▮ If, after a full hearing, the Interstate Commerce Commission finds any undue or unreasonable advantage, preference or prejudice as between persons or localities in intrastate commerce on the one hand, and interstate or foreign commerce on the other, it is empowered under Section 13(4) of the Inter-State Commerce Act, 49 U.S.C.A. § 13(4), to prescribe an intrastate rate which in its judgment, will remove such advantage, preference, prejudice, or discrimination, despite any decision or order of any state authority to the contrary. Houston, East and West Texas Ry. v. United States, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; Minnesota Rate Cases, 230 U.S. 352, 33 S.Ct. 729, 57 L.Ed. 1511, 48 L.R.A.,N.S., 1151 Ann.Cas.1916A, 18; Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291.

▮ The Commission is also empowered by the same Section of the Act to prescribe intrastate rates on a statewide level, if necessary to prevent any undue, unreasonable or unjust discrimination against interstate commerce as a whole. Thus, if the Commission finds that the intrastate rates charged and collected do not contribute their fair share to the maintenance of an adequate railway system, it is empowered to prescribe such intrastate rates as in its judgment will pay a fair proportionate share of the cost of maintenance of the transportation system, i. e. see R. R. Commission of

Wisconsin v. C. B. & Q. R. R. Co., 257 U.S. 563, 42 S.Ct. 232, 66 L.Ed. 371, 22 A.L.R. 1086; State of New York v. United States, 257 U.S. 591, 42 S.Ct. 239, 66 L.Ed. 385; Florida v. United States, supra; State of North Carolina v. United States, 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760.

But we are not concerned with the discrimination against interstate commerce as a whole, because of the insufficiency of the intrastate rates to bear their just and equitable share of the cost of maintaining an adequate transportation system, as in the cases last cited. We therefore have no occasion to consider whether the intrastate rates in this case are fairly compensatory to the charging carriers. We have the question whether the intrastate rates charged and collected over specific routes of a railway system operate to give an undue or unreasonable preference or advantage to persons engaged in intrastate commerce over persons engaged in interstate commerce. In other words, we are dealing with rates in their relationship to each other, not in their relationship to adequate income. See Florida v. United States, supra, 282 U.S. at page 214, 51 S.Ct. at page 124, 75 L.Ed. 291.

▮ If the rates are unduly or unreasonably preferential to intrastate manufacturers, and prejudicial to the interstate manufacturers, the Commission may eliminate the forbidden preference and prejudice, even though the intrastate rates are compensatory. See Ayrshire Collieries Corp. v. United States, 335 U.S. 573, 69 S. Ct. 278 decided January 3, 1949; New York v. United States, 331 U.S. 284, 344, 67 S.Ct. 1207, 91 L.Ed. 1492. But regardless of the underlying basis for the exertion of the Commission's power to prescribe intrastate rates, it must clearly appear from the evidence that the exercise of the dominant power is essential to the protection and advancement of interstate commerce, and that the power exercised is no more than sufficient to correct the prohibited detriment. North Carolina v. United States, supra; Florida v. United States, supra.

The Commission's order in this case explicitly recognizes that disparity alone between particular rates on intrastate and interstate traffic does not empower it to

794

prescribe intrastate rates. Indeed, it recognizes that injurious competition between persons and localities engaged in intrastate and interstate commerce is a sine qua non to a finding of undue or unreasonable advantage, prejudice or preference, adversely affecting interstate commerce. It found "real, substantial and unwarranted disparity in the inbound rates on soda ash, an important material in the manufacture of glass", and that there was "keen competition in the sale of finished products between the complaining manufacturers, who are subjected to the relatively high rates, and those at Palestine, Waco and Shreveport, who are accorded the relatively low rates." It was of the opinion that "such rate disparity results and will result pro tanto in depriving the complaining manufacturers of that fair opportunity to which the law entitles them." See 266 I. C. C., p. 203. It did not stop with generalizations. It particularized the competitive situation between those manufacturers of glass products who pay intrastate rates, and those paying interstate rates, and it was at pains to show specifically the effect of the cost of this important raw material upon the competitive advantages in the open market for the same glass products.

■ To paraphrase Mr. Justice Douglas, in Ayrshire Collieries Corp. v. United States, supra, it is not within the competence of our limited function in this field to undertake to accommodate the factors of transportation conditions, distance and competition differently than the Commission has done in this case. The problems presented are essentially for the administrative rate-maker as long as no statutory requirement is overlooked.

■ We find that the Commission's findings are supported by the evidence, and they are adopted as the findings of this court.

We conclude that this court has jurisdiction of the parties and of the subject matter, and that the Commission acted within its statutory authority. Its findings are supported by the evidence and its judgment is affirmed.

VAUGHT, Chief Judge (dissenting).

I regret my inability to agree with my associates on the majority opinion.

The evidence upon which the Commission's findings are based, in my judgment, is incompetent, consisting of conclusions, and does not approach that "high standard of certainty," prescribed by the Supreme Court in North Carolina et al. v. United States et al., 325 U.S. 507, 65 S.Ct. 1260, 89 L.Ed. 1760; Houston, East & West Texas Railway Company v. United States, 234 U. S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; Florida et al., v. United States et al., 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291.

The enforcement of the order should be enjoined.