314

BEST WAY MOTOR FREIGHT, INC., Consolidated Freightways Corporation of Delaware, Interstate Freight Lines, Inc., Portland-Seattle Freight Lines, Inc., Pacific Intermountain Express Co., Garrett Freightlines, Inc., Oregon-Nevada California Fast Freight, Inc., and United Buckingham Freight Lines, Inc., Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

and

Helphrey Motor Freight, Inc., Intervening Defendant.

Civ. A. No. 3230.

United States District Court
W. D. Washington, S. D.

Jan. 24, 1966.

Rehearing Denied March 11, 1966.

George R. LaBissoniere, Seattle, Wash., William B. Adams, Portland, Or., for plaintiffs.

Donald F. Turner, John H. D. Wigger, Washington, D. C., William N. Goodwin, Seattle, Wash., for United States.

Robert W. Ginnane, Manny H. Smith, Clarence W. Vandegrift, Washington, D. C., for I.C.C.

Joseph L. Thomas, Spokane, Wash., and Frank B. Hand, Jr., Washington, D. C., for Helphrey Motor Freight.

Before HAMLEY, Circuit Judge, and LINDBERG and BOLDT, District Judges.

HAMLEY, Circuit Judge:

This is an action to enjoin and set aside orders of the Interstate Commerce Commission (Commission) entered on August 19, and December 18, 1964, in the three proceedings, consolidated, referred to below. The eight plaintiffs engage in interstate freight transportation by motor carrier in the state of Washington. Helphrey Motor Freight, Inc., in whose favor the questioned orders were entered, has intervened in support of those orders.

The three agency proceedings are Docket Nos. MC–F–8083, MC–F–8229, and MC–107353 (Sub–No. 14). Docket No. MC–F–8083, Helphrey Motor Freight, Inc. — Purchase — Manning Freight Lines, Inc. (Manning purchase), is the result of a joint application filed February 14, 1962, wherein Helphrey and Manning sought authority under Section 5 of the Interstate Commerce Act (Act), 24 Stat. 380 (1887), as amended, 49 U.S.C. § 5 (1964), for the purchase by Helphrey of the operating rights and property of Manning. By the same application, Harold Morse and Henry J. Holien, who control Helphrey through ownership in the aggregate of ninety-eight percent of its outstanding capital stock, sought authority under the same section of the Act to acquire control of the operating rights and property through the purchase.

Docket No. MC–F–8229, Helphrey Motor Freight, Inc.—Control and Merger—

316

Okanogan Valley Motor Freight, Inc. (Okanogan merger), is the result of a joint application filed September 7, 1962, wherein authority is sought under Section 5 of the Act: (1) for the acquisition by Helphrey of control of Okanogan Valley Motor Freight, Inc. (Okanogan) through the purchase of its capital stock; (2) for the merger into Helphrey of the operating rights and property of Okanogan for ownership, management and operation; and (3) for the acquisition by Morse and Holien of Okanogan's operating rights and property through the above transaction.

Docket No. MC–107353 (Sub-No. 14) Helphrey Motor Freight, Inc. (Helphrey extension) is an application by Helphrey for a certificate of public convenience and necessity authorizing certain operations as a motor common carrier of general commodities with certain exceptions, in interstate commerce, over certain routes in the state of Washington between Spokane, Seattle, Yakima and Wenatchee, under Section 207 of the Act, 49 Stat. 551 (1935), 49 U.S.C. § 307 (1964).

The rights sought under the certificate were similar to the operating rights which Okanogan purported to hold pursuant to the second proviso of Section 206(a) (1) of the Act (this proviso was deleted by amendment, October 15, 1962).[1] Although Okanogan's second-proviso rights were included in the merger proposal, Helphrey, nevertheless, made a separate application under Section 207.

These three applications were heard concurrently. The Manning purchase and the Okanogan merger were heard by an Examiner sitting jointly with the Joint Board of the State of Washington which heard the Helphrey extension. Plaintiffs protested because of the assertedly adverse effect rulings favorable to Helphrey would have on their respective interstate operations. As a result of this hearing the Examiner approved the Manning purchase and the Okanogan merger. The Joint Board denied the Helphrey extension. Exceptions were filed and the rulings of the Examiner and Joint Board were reviewed by division 3 of the Commission.

By decision and order dated August 19, 1964, division 3 approved all three applications. Plaintiffs in the case before us petitioned for reconsideration, which petition was denied by division 3 on December 18, 1964. This action was then commenced.

In seeking the extension, and also in seeking approval of the merger, Helphrey produced testimony tending to show that the Okanogan interstate operation purportedly under the second proviso, which would be discontinued as a result of the merger, had served the public convenience and necessity and that for this reason Helphrey should be given similar rights. Before the agency, however, plaintiffs challenged the propriety of considering the Okanogan second-proviso interstate operation in determining whether public convenience and necessity required that Helphrey be given such rights.

Such reference to the Okanogan second-proviso operation was inappropriate, plaintiffs argue, because the validity of Okanogan's interstate operations under that proviso was in issue in a proceeding then pending before the Commission;[2] and under applicable law, that issue must

1. The second proviso of Section 206(a)(1), prior to October 15, 1962, reads: "*And provided further*, That this paragraph shall not be so construed as to require any such carrier lawfully engaged in operation solely within any State to obtain from the Commission a certificate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State if there be a board in such State having authority to grant or approve such certificates and if such carrier has obtained such certificate from such board. Such transportation shall, however, be otherwise subject to the jurisdiction of the Commission under this chapter."

2. Docket MC–109394 (Sub-No. 4)—Okanogan Valley Motor Freight, Inc.—Eligibility—Second Proviso.

necessarily be resolved against Okanogan. The plaintiffs moved, at the outset of the agency proceedings, when it became known that Helphrey would produce such evidence, that the proceedings be continued until such time as the Commission had decided the *Okanogan* matter.

This motion was denied, as were subsequent motions, made from time to time throughout the hearing, to strike testimony based upon Okanogan's interstate operations. The decision and order of August 19, 1964, indicate that with respect to both the Okanogan merger and the Helphrey extension, the Commission placed reliance upon the facts pertaining to Okanogan's interstate operations under the second proviso.

The Commission rejected, on two grounds, plaintiffs' contention that it was not appropriate to consider Okanogan's second-proviso operations in determining the question of public convenience and necessity. The first ground was that the validity of Okanogan's second-proviso operation is " * * * not for determination in these proceedings." The second reason why the Commission rejected plaintiffs' contention on this point, was stated as follows in the report of division 3:

"In summary, Motor Freight [Okanogan] has provided necessary and adequate service. Assuming that its operations were unlawful, as charged by protestants, such operations were under color of right and therefore are entitled to consideration as evidence that a continuance thereof would meet a public need. Bowman Transportation, Inc., Extension—Five Point Authority, 92 M.C.C. 651. In our opinion such evidence, together with that of the supporting shippers, warrants a grant of authority."

Plaintiffs renew in this court, as a basis for setting aside the Commission orders, the contention that it was improper for the agency to take into account the facts concerning Okanogan's second-proviso operations in passing upon the Okanogan merger and the Helphrey extension.

Consideration of this argument requires us to first review the Okanogan second-proviso proceeding. In order to enable a carrier to meet the qualifications stated in the second proviso of Section 206(a) (1) of the Act, and thereby secure certificate authority to engage in interstate operations, the Commission prescribed a form of application which it designated as its Form BMC 75. This form required the applicant to state that it was lawfully engaged in operations solely within a state, that it was the holder of a certificate of public convenience and necessity issued by an appropriate state agency authorizing such operations, and that such agency was duly empowered to issue a certificate of public convenience and necessity.

Okanogan was the holder of certain intrastate operating rights within the state of Washington under Permit No. CC–19, issued to it by the Washington Public Service Commission (Washington Commission). By statement (Form BMC 75) filed with the Commission on November 7, 1960, Okanogan, relying upon these interstate rights, sought to obtain concomitant interstate rights pursuant to the second proviso of Section 206(a) (1). It thereby represented to the Commission that it was the holder of a certificate of public convenience and necessity issued to it by the Washington Commission authorizing the intrastate operations relied upon. As indicated above, this proceeding was docketed as Docket MC–109394 (Sub–No. 4).

On January 18, 1961, the Commission without notice to plaintiffs or to the public, and without hearing, and relying solely upon the representations of Okanogan contained in its Form BMC 75 statement, issued its order in the *Okanogan* second-proviso registration case. The Commission stated in this order that Washington State Permit No. CC–19 authorized operations as a common carrier and constituted a certificate of public convenience and necessity within the meaning of the second proviso of Section 206(a) (1). The Commission further stated in this order that Okanogan

met the requirements of this statutory proviso. It ordered that Okanogan "* * * may lawfully engage in operations in interstate and foreign commerce as a common carrier of property corresponding to the operations authorized in Washington Permit No. CC–19."

Plaintiffs in the instant proceeding, and others, petitioned the Commission to vacate and set aside its order of January 18, 1961, and to hold a hearing on the application to register under the second proviso. The Commission denied the petition to vacate and set aside the order, but did set the application for hearing. This hearing was held on November 7 and 8, 1961, at which hearing these plaintiffs appeared. As a result of this hearing, the Commission's Examiner, on September 28, 1962, filed his report and recommended order. The Examiner held that the authority which Okanogan obtained from the Washington Commission was not a certificate of public convenience and necessity within the meaning of the second proviso. The Examiner therefore held that the statement of intent to operate in interstate commerce filed by Okanogan must be disapproved.

Okanogan filed exceptions to the Examiner's report and order, to which plaintiffs herein replied. The proceeding was finally submitted to the Commission for its consideration on December 28, 1962. No decision has ever been made by the Commission in the matter.

Plaintiffs argue that if Okanogan did not have valid second-proviso rights the Commission was without jurisdiction to entertain the Okanogan merger or Helphrey extension proceedings, and even if it did have jurisdiction, the facts pertaining to such second-proviso operations would not constitute substantial evidence in support of those applications. Accordingly, plaintiffs urge, the Okanogan proceeding should have been decided before a hearing was held on the Okanogan merger and Helphrey extension proceedings.

■ If the only jurisdiction which the Commission has over one of the parties to a merger proceeding rests upon asserted second-proviso operating rights, proof that such rights are not validly held deprives the agency of jurisdiction to entertain the merger application. Hart Motor Express, Inc.—Control and Merger, 90 M.C.C. 527, *aff'd sub nom.*, Hart v. I.C.C., D.Minn., 226 F.Supp. 635; Forbes Transfer Co., Inc.,—Purchase—Lane and Ferrell, 87 M.C.C. 601, 605; Glendenning Motorways, Inc.—Purchase—Superior Service Co., Inc., 80 M.C.C. 131. And, without a Section 5 merger application to decide, division 3 of the Commission is, under the Commission's rules governing internal division of agency work, without authority to decide a directly-related application for a certificate of convenience and necessity. Hart, *supra*, 226 F. Supp. at 643.

■ In the case before us, however, Okanogan is a "carrier" subject to Commission jurisdiction independent of its second-proviso rights, since it holds other certificates of convenience and necessity issued by the Commission. Hence, even assuming that Okanogan's second-proviso rights are invalid, the Commission nevertheless has jurisdiction of the two carriers involved in the Okanogan merger proceeding. This being so, division 3 also has authority to entertain the directly-related proceeding for a certificate of convenience and necessity.

This leaves for consideration plaintiffs' argument that even if the invalidity of Okanogan's second-proviso operation did not undermine the Commission's jurisdiction, the facts concerning such an illegal operation may not be accepted as substantial evidence supporting the applications.

We do not think that it is an answer to this argument to assert that the validity of Okanogan's second-proviso operation is "* * * not for determination in these proceedings." If it is true that evidence pertaining to an invalid operation must be rejected as insubstantial, that evidence may not be accepted as substantial without first determining in this or some other proceeding that the second-proviso operation was lawful.

Nor are we impressed with the Commission's argument that, even without the evidence pertaining to Okanogan's operation, there is substantial evidence to support the finding that the service is required by public convenience and necessity. The portion of division 3's report quoted above, demonstrates that the Commission did not hold that the independent shipper testimony, considered above, was sufficient to warrant a grant of the applications.

In support of its contention that the evidence pertaining to the Okanogan second-proviso operation should not be deemed substantial, plaintiffs cite Commission decisions in which no weight was accorded evidence of unlawful operations. Vance Trucking Co., Inc.—Purchase—Northern Neck Transfer, Inc., 87 M.C.C. 545, Palmer Lines, Inc.—Control and Merger, 87 M.C.C. 160, Worster—Control—McKay and MacLeod Corp., 85 M.C.C. 679.

But Commission authority can also be found which supports the contrary view that unlawful operations, conducted under color of law, are entitled to consideration in determining whether public convenience and necessity warrants the proposed service. Bowman Transportation, Inc., Extension—Five Point Authority, 92 M.C.C. 651; Michigan Express, Inc.—Purchase—Williams, 45 M.C.C. 211; Hoover Motor Express Co., Inc. Extension—Intermediate Points, 42 M.C.C. 315; Royal Cadillac Service Inc., Common Carrier Application, 34 M.C.C. 787; D.A. Beard Truck Lines, Co., Common Carrier Application—New Operation, 34 M.C.C. 395. The decisions involving the takeover of second-proviso operating rights thus appear to be in conflict. Compare Palmer Lines, Inc., *supra*, and Worster, *supra*, with Michigan Express, Inc., *supra*.

The Commission has chosen to rely upon this second line of authority. It has, in fact, relied specifically upon the *Bowman* case in which there was actually a showing of bad faith in connection with the illegality of the operation. In our case, Okanogan not only carried on its second-proviso operations under color of law since it sought and obtained Commission authority to do so; but it was not shown to be guilty of fraud or concealment of fact in any respect. If Okanogan's second-proviso operation is invalid it is because that carrier, and the Commission, have made a mistake of law as to the character of the state authority held by Okanogan.

■■ In our opinion, the probative value of evidence pertaining to a particular operation, in determining an issue of public convenience and necessity, is not affected by the fact that the operation may have been unlawful. If such an operation demonstrates a need for such a service, the need is nonetheless because of the fact, if it is a fact, that operating authority was lacking. Thus evidence pertaining to an invalid operation ought not to be rejected because it is "insubstantial."

We need not decide whether the Commission may, or must, as a sort of penalty, reject evidence pertaining to an illegal operation where such operation was not conducted under color of law or was associated with fraud or concealment; or, conversely, whether, given an operation conducted under color of law, bad faith is immaterial, as was held in *Bowman*. As before stated, Okanogan operated under color of law, and no bad faith was shown.

■■ It is true that the Commission could have and sometimes does, withhold action upon a directly-related certificate application when the legality of a second-proviso operation is currently under agency review. See Bond—Purchase—Green Truck Lines, Inc., 38 M.C.C. 275, 279–80. But this is a procedural matter resting within the discretion of the Commission. The failure of that agency, under the circumstances of the case before us, to similarly withhold action, does not amount to an abuse of discretion.

■ We accordingly hold that the Commission did not err in assuming jurisdiction to act upon the Okanogan merger and the Helphrey extension, and in granting the requested authority.

Plaintiffs' remaining argument relates to the third of the three application matters which were dealt with by the Commission in these consolidated proceedings. We refer to the Manning purchase—Docket No. MC–F–8083. Plaintiffs contend that the Commission erred in failing to consider and pass upon plaintiffs' point that Helphrey had assumed control of the operation of and had completed the purchase of Manning without the prior approval of the Commission as required by Section 5 of the Act.

Plaintiffs raised this point in their briefs and exceptions before the Commission. Division 3 of the Commission did not, in its report, enter into a discussion of the contention. However, it did say therein that: "Contentions of the parties not discussed herein have been considered and have been found to be without merit."[3] These statements do not constitute an adequate discussion of the question.

 It is fair to infer, however, that these statements made by the Commission were meant to indicate adoption of the Examiner's findings and conclusions as to this particular point, as stated in the Examiner's recommended report and order. However, in his recommended report and order, all that the Examiner said in rejecting this contention was that " * * * the evidence does not sustain it."

Having in view the evidence referred to in plaintiffs' opening brief, we do not regard this as an adequate treatment of plaintiffs' contention. The question which plaintiffs raised involves a possible violation of Section 5(4) of the Act, 54 Stat. 907 (1940), 49 U.S.C. § 5(4) (1964). Where such a violation is shown, the Commission usually disapproves an application which would, in effect, sanction the unlawful act. See Gilbertville Trucking Co. v. United States, 371 U.S. 115, 127–129, 83 S.Ct. 217, 9 L.Ed.2d 177. The question was thus substantial enough to require administrative findings in sufficient detail to permit intelligent court review. See Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 167–168, 83 S.Ct. 239, 9 L.Ed.2d 207; United States v. Chicago M., St. P. & P. R. R., 294 U.S. 499, 504–505, 55 S.Ct. 462, 79 L.Ed. 1023; State of Florida v. United States, 282 U.S. 194, 215, 51 S.Ct. 119, 75 L.Ed. 291.

The consolidated proceedings are therefore remanded to the Commission with directions to make administrative findings and state conclusions supporting the Commission's disposition of this contention involving the Manning purchase.

3. The Commission also stated in this report:

"The conclusions of the examiner that purchase of the operating rights and property of Manning by Helphrey and merger into the latter of the operating rights and property of Motor Freight [Okanogan] on the bases above outlined would be just and reasonable, that Helphrey would be able to meet its obligations, that there will be no adverse effect on employees and that the fixed charges incurred as a result of the transactions would not be contrary to the public interest, are, in our opinion, proper and are hereby affirmed."