ADKINS, Justice
(dissenting).
The petitioner, Camp Lumber Company, Inc., through its President, made application to the Public Service Commission for a limited common carrier certificate of public convenience and necessity to haul building and construction aggregates to all points in Florida east of the Jefferson County line. This in effect was an application to serve all of peninsular Florida. The Public Service Commission granted petitioner’s application in Order No. 9294, but limited his operations to the four counties of Alachua, Bradford, Clay and Putnam. I would concur in part and reverse in part.
Petitioner has been hauling these products since 1941. He testified that he has hauled “practically all over the State.” The hearing examiner found that petitioner has serviced “the northern part of peninsular Florida.” And finally, the Commission found that he has hauled' in the “Alachua County area.” These findings bear a remarkable resemblance to what each deems to be the proper solution to this application. While no one agrees to the area of service question, all agree that petitioner did not apply for “grandfather” authority under Fla.Stat. § 323.031, F.S.A., through “oversight.” Since 1965, he has utilized a very questionable “buy and sell” arrangement to haul these products without a certificate, or has leased his equipment to Mid-Florida Hauling, Inc., a certificated carrier.
This application was supported by four manufacturers of products using sand and stone, one road builder and one sand mine operator. One manufacturer operates a sand mine as well. The testimony of any one of the supporting witnesses is typical of the caliber of evidence solicited from all of the supporters. Joe Anderson, President of Anderson Contracting Company, whose company is working in Columbia, Madison, Taylor, Hamilton and Jefferson counties, testified as to the needs in securing road construction aggregates.
“A Well, there’s no problem, sir; there’s just not enough trucks. That’s it in general. That’s it in general. In fact, on numerous oc- *652 sions, like Mid-Florida, Mr. Hemingway, and we could probably keep naming them, by the week that we call, needing trucks, and no trucks.
‘Joe, we will have you three there tomorrow.’
But tomorrow never does get there. In fact, several years ago we didn’t even have any big trucks and it has forced us in the last five years to get approximately a dozen trucks and trailers to do, I would say, 80 or 90 per cent of our hauling. And that’s how the case is today with us.
And if there's a lot of trucks available today, I have a place to put a bunch tomorrow in North Florida.”
On cross-examination, Mr. Anderson testified, as follows:
“Q Are you fairly familiar with the road aggregate hauling business?
"A Yes.
“Q You use it quite a bit?
“A Yes, sir.
“Q Isn’t there times when because of weather and the mines getting low on supply that they just can’t get to you?
“A Yes.
“Q Could this be the reason—
“A No.
“Q —you couldn’t—
“A No.
“Q —that you said you couldn’t get some on one or two occasions ?
“A More than two.
“Q Could this be the reason?
“A We have seen a supply shortage, right. It had been that way at Live Oak though, for instance, I think for maybe several years.
“Q Where have you been ? What county were you in when you needed somebody to haul something?
“A All of them that I just named.”
On the other side the protestants, six in number, presented evidence as to their authority, amount of equipment, and the nature of their operations. They contended that they were ready, willing and able to serve all the transportation needs of the area. They further contended that the certification of yet another hauler would take dollars from their pockets. Only one protestant, however, could and did cite fact and figure that tended to support the financial deprivation argument. The President of Reliable Trucking Company, a certificated hauler with state-wide authority, testified that he operated four or five more power units the previous year than he was operating at the time of the hearing because business had “slacked off.” His base of operations is St. Petersburg.
On substantially these facts, the hearing examiner made his recommendation to the Public Service Commission. The examiner did not recommend that a certificate be granted for all of Florida east of the Jefferson County line. Rather, he limited his recommendation to all of Florida east of the Jefferson County line and north of State Road SO. I presume that this limitation was based upon the slackening of business in the St. Petersburg area referred to above.
The protestants primary objection to the hearing examiner’s findings is based on the holding of this Court in Southern Armored Service, Inc. v. Mason, 167 So.2d 848 (Fla.1965), that the fruit obtained from a poisonous tree is tainted, and, therefore, inadmissible as evidence. In Southern Armored Service, Inc. v. Mason, supra, we said:
“We are forced to the conclusion that Order No. 5397 was issued in violation of the applicable statutes, that the Commission did not have the authority to issue it *653 under these circumstances, and therefore it was void when issued.
“In view of this conclusion we think it was error for the Commission to receive and consider as proof of public convenience and necessity evidence of Armored Express’ operation under Order No. 5397.
t< }jc * *
“It seems to us that to allow proof of public convenience and necessity to be made by evidence of a legally unauthorized operation would defeat the obvious purpose of the statute which is to prevent such operations. It would reward rather than penalize such unauthorized conduct.” (pp. 850, 851.)
The Commission correctly categorized a great deal of the evidence petitioner presented as inadmissible. Since two of Mr. Camp’s drivers were arrested in 1964, and fined for hauling without a certificate, there can be no doubt that he knowingly operated for several years illegally and cannot receive any benefit from his illegal activities.
Up to this point, I can find no fault in the Public Service Commission’s actions. However, from this point on I have grave doubts for the simple reason that there is no evidence in the record to support their ultimate findings.
Immediately following the discussion of Southern Armored Service, Inc. v. Mason, supra, the Commission made its findings:
“There is, however, an obvious need for short-haul transportation in the Ala-chua County area which the applicant is in a position to render. The remaining testimony of the supporting witnesses which has been considered by the Commission does indicate that due to the proximity of applicant’s base of operations in Gainesville to the supporting shippers, applicant can give satisfactory service which cannot be reasonably provided by the protestants whose terminals are located at more distant points. Therefore, we 'are of the opinion that the area comprising the Alachua, Bradford, Clay and Putnam Counties would be an area which the applicant can satisfactorily serve with the three pieces of equipment which he now operates. In effect, the Commission is certificating 'a carrier whose vehicles have been operating and transporting the commodities in question in the area for nearly thirty years.” (Emphasis added.)
What the Commission has done apparently in this paragraph is to say we must punish the applicant because he has operated illegally in the past and he will continue to do so in the future, so grant him a certificate, but severely limit his area of operation.
This Court has repeatedly held that the findings and conclusions of the Commission must be upheld as long as they are supported by competent, substantial evidence regardless of whether we would have reached a different conclusion from the same evidence. F.L.P., Vol. 3, Carriers, § 56, p. 496, and cases cited therein. However, this does not mean that we will 'act merely as a rubber stamp. In Central Truck Lines, Inc. v. King, 146 So.2d 370 (Fla.1962), this Court invalidated an order of the Railroad and Public Utilities Commission on the ground that there were no findings upon which the Commission predicated its conclusion that public convenience and necessity required that the 'application be granted. We stated after quoting the Order in question:
“It is crystal clear from the face of the Commission’s Order that no findings of fact are contained therein upon which the Commission predicated its ultimate conclusion ‘that public convenience and necessity demand that this 'application be granted as modified in the ordering paragraph below.’
“ * ‡ ‡
“We do not deem it necessary to restate the underlying, as well as cogent reasons, for the requirement that boards, bureaus and commissions should make separate findings of fact upon which an *654 ultimate conclusion is predicated. However, we are persuaded to quote with approval from the opinion of the United States Supreme Court in the case of State of Florida et al. v. United States, 282 U. S. 194, 51 S.Ct. 119, 75 L.Ed. 291:
“ ‘ * * * in order to sustain the statewide order * * * it must appear that there are findings, supported by the evidence, of the essential facts * * *, which would justify that conclusion.
i( ( * * *
“ ‘The question is not merely one of the absence of elaboration or of a suitably complete statement of the grounds of the Commission’s determination, to the importance of which this court has recently adverted (Beaumont, Sour Lake & Western Railway Co. v. United States, decided November 24, 1930, 282 U.S. 74, 51 S.Ct. 1, 75 L.Ed. 221), but of the lack of the basic or essential findings required to support the Commission’s order. In the absence of such findings, we are not called upon to examine the evidence in order to resolve opposing contentions as to what it shows or to spell out and state such conclusions of fact as it may permit. The Commission is the fact-finding body, 'and the Court examines the evidence not to make findings for the Commission but to ascertain whether its findings are properly supported.’ ” Central Truck Lines, Inc. v. King, 146 So.2d 370, pp. 372, 373.
While the Order in the case sub judiee is not as blatantly offensive as that in Central Truck Lines, Inc. v. King, supra, we are faced with essentially the same problem. The only difference is that here the Commission has employed a great deal of camouflage.
As noted above, only one protestant was able to show a definite financial deprivation if the certificate was granted as requested, and the hearing examiner took his position into consideration by not allowing the petitioner to operate south of State Road 50. There is absolutely no evidence to support any further limitation. Only the testimony of Mr. Henry Taylor Pierce, a small sand mine operator from Grandin, Florida, could on first blush support this limitation. On cross-examination the following facts were elicited:
“Q Is your primary need Alachua, Putnam and Duval Counties?
“A Well, Jacksonville is the furtherest north we can go. You can draw a line around any sand mine or any mine of anything, and the price of sand is based on — all of them are are about the same. The distance you haul it limits you to your delivery point. So you can draw a line around any mine, rock mine, sand mine, any of the rest of them, and the freight cuts you off where you are not competitive to the other district, from the other mines.
“Q Would that line be roughly 50 miles ?
“A It all depends on where the other mine is located. We will say the maximum would be 50 miles, yes.
Q We are talking about your mine, Mr. Pierce.
“A That is right, my mine. We can go to Ocala from my place. That’s a borderline. We can go to Jacksonville. That’s about a borderline. 50 miles would be in round figures about what you can do.”
What Mr. Pierce testified to is not what is a feasible operation for a hauler, but rather, what is an economically feasible distance for a small mine operator to deliver his product and still make a profit.. The hauling business is not so restrictive. The controlling factor in their operation is the number of miles the trucks must travel empty. As long as trucks are loaded,' they can serve the shippers and make a reasonable profit. To base a limitation on the testimony of a mine operator is, *655 therefore, improper. Further, since the record is void of any other evidence that could possibly support such a limitation, this restriction should be stricken unless the Commission can show after further hearings that there is some competent, substantial evidence to support its limitation.
For the Public Service Commission to arbitrarily limit petitioner’s application without supporting, competent substantial evidence is manifestly unjust. If this caliber of evidence is required to support a finding of public convenience and necessity, it should also be required to limit one’s area of operation after public convenience and necessity is found. Again, only one protestant was able to affirmatively show a need for a limitation and the hearing examiner took that into consideration. Why then was the petitioner limited to the four enumerated counties?
Therefore, I would reverse the Commission’s Order No. 9294, with directions that the Commission reconsider this matter and enter an order which meets the requirements of our statutes.
ERVIN and DEKLE, JJ., concur.