The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY et al., Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

No. 63–745–EC.

United States District Court
S. D. California,
Central Division.

Jan. 25, 1965.

O'Melveny & Myers, by Pierce Works,. Homer I. Mitchell, Warren M. Christopher, Donald M. Wessling, Los Angeles,. Cal., Sidley, Austin, Burgess & Smith by Douglas F. Smith, Howard J. Trienens,. George L. Saunders, Jr., Chicago, Ill., for plaintiffs and intervening plaintiffs. Amador Cent. R. Co. and others.

Gibson, Dunn & Crutcher, by Dean C.. Dunlavey, Los Angeles, Cal., Ernest D.. Grinnell, Jr., John E. McCullough, St..

Louis, Mo., for intervening plaintiff St. Louis-S. F. R. Co.

Gibson, Dunn & Crutcher, by Dean C. Dunlavey, Los Angeles, Cal., W. A. Thie, Denison, Tex., M. E. Clinton, Dallas, Tex., John E. McCullough, St. Louis, Mo., for intervening plaintiff Missouri-Kansas-Texas R. Co.

Richard E. Tuttle, Roderick B. Cassidy, J. Thomason Phelps, Cyril M. Saroyan, San Francisco, Cal., for intervening plaintiffs People of the State of California and Public Utilities Commission of California.

Robert Y. Thornton, Lloyd G. Hammel, John F. Weisser, Jr., Salem, Or., Joseph Besnah, Inglewood, Cal., for intervening plaintiffs Arizona Corporation Commission et al.

Thomas R. Sheridan, Acting U. S. Atty., Los Angeles, Cal., William H. Orrick, Jr., Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Robert W. Ginnane, Gen. Counsel, Arthur J. Cerra, Asst. Gen. Counsel, I. C. C., Washington, D. C., for defendants United States and Interstate Commerce Commission.

Joseph F. Eshelman, Edward A. Kaier, Philadelphia, Pa., Kenneth H. Lundmark, New York City, Thelen, Marrin, Johnson & Bridges, by Gordon Johnson, James W. Baldwin, Los Angeles, Cal., for intervening defendants Baltimore & O. R. Co. and others.

Winston, Strawn, Smith & Patterson, by Bryce L. Hamilton, Chicago, Ill., Belnap, Spencer, Hardy & Freeman, by Nuel D. Belnap, Richard M. Freeman, Daniel J. Sweeney, Nye F. Morehouse, Chicago, Ill., Newlin, Tackabury & Johnston, by George W. Tackabury, Frank R. Johnston, Los Angeles, Cal., for intervening defendants Chicago & N. W. Ry. Co. and others.

Raymond K. Merrill, Chicago, Ill., Welsh & Cummins, Los Angeles, Cal., for intervening defendants Chicago, M., St. P. & P. R. Co.

Before BARNES, Circuit Judge, and MATHES and CRARY, District Judges.

PER CURIAM.

This is an action to enjoin and set aside orders of the Interstate Commerce Commission (hereafter referred to as Commission) of March 21, 1963, as amended by order of June 20, 1963, and supplemental order dated December 31, 1963, which orders prescribed new divisions of joint rail rates on transcontinental freight traffic. The Commission's order of March 21, 1963, provided for new divisions of joint rates on Eastern and Mountain-Pacific transcontinental freight traffic substantially more favorable to the Eastern lines than the present divisions. New divisions were also established on transcontinental traffic originating and terminating in Midwest territory and for Midwestern lines participation as intermediate carriers of traffic to and from Eastern (official) and Mountain-Pacific territory. These divisions benefited the great majority of Midwestern lines.

In April, 1954, most of the Eastern lines filed a complaint before the Commission seeking to increase their divisions of transcontinental freight revenue on traffic moving between stations of the Eastern lines in Eastern territory and stations in the eleven western states of Mountain-Pacific territory. The other Eastern lines now before the court filed similar complaints shortly thereafter.

A group of Midwestern lines filed a separate complaint before the Commission against Mountain-Pacific lines and Eastern lines which brought into issue the lawfulness of (1) their divisions of joint rates between Midwest territory and stations in the western part of Mountain-Pacific territory; and (2) Midwestern lines subdivisions of the primary western divisions of joint rates between Eastern territory and said stations in Mountain-Pacific territory as to which the Midwestern lines performed intermediate service.

The Mountain-Pacific lines filed answers and cross-complaints to the complaints of the Eastern and Midwestern lines. Hearings, which terminated in the

Commission's said 1963 orders, began April, 1955. All groups offered evidence based on their studies and claims re costs.

The *present action* was filed by plaintiffs, seven principal western roads and four smaller roads serving Mountain-Pacific territory, on June 23, 1963. A complaint in intervention was filed by forty-five additional roads serving Mountain-Pacific territory. All are referred to here as Mountain-Pacific lines. Also intervening were the People of the State of California and regulatory agencies of ten western states and the St. Louis-San Francisco Railway and Missouri-Kansas-Texas Railroad, Midwestern lines whose revenues were reduced by the Commission's order.

The present divisions of joint rates on transcontinental traffic were established by agreement which has not been approved by the Commission. These revenues account for about 50% of the total freight revenues of Mountain-Pacific lines, 15% of that of Midwestern lines and about 6% of that of Eastern lines.

On June 27, 1963, the court issued a Temporary Restraining Order pending hearing on application for Interlocutory Injunction, and this three-judge court, on August 3, 1963, after hearing, entered an Interlocutory Injunction restraining enforcement of the new divisions order until after hearing by the Commission of petitions for reconsideration.

The Commission filed a "Supplemental Report" and order on December 31, 1963, denying all petitions for reconsideration which had been filed by plaintiffs and intervening plaintiffs (hereafter referred to as plaintiff). The new order made some minimal changes in the order of March 21, 1963. On March 23, 1964, this court entered its Judgment for Interlocutory Injunction, on Supplemental and Amended Complaints previously filed, enjoining the enforcement of the Commission's order of December 31, 1963.

The statutes primarily involved are Section 15(6) of the Interstate Commerce Act [49 U.S.C. § 15(6)] and Sections 7(c), 8(b) and 10(e) of the Administrative Procedure Act, enacted in 1946, [5 U.S.C. §§ 1006(c), 1007(b) and 1009(e)]. Section 15(6) provides that in prescribing divisions the Commission is obligated to give due consideration, "among other things," to the following factors:

(1) "(T)o the efficiency with which the carriers concerned are operated,"

(2) "the amount of revenue required to pay their respective operating expenses, taxes, and a fair return on their railway property held for and used in the service of transportation,"

(3) "the importance to the public of the transportation services of such carriers,"

(4) "and also whether any particular participating carrier is an originating, intermediate, or delivering line, and"

(5) "any other fact of circumstance which would ordinarily, without regard to the mileage haul, entitle one carrier to a greater or less proportion than another carrier of the joint rate, fare or charge."

The numbering of the items to be considered is ours.

As to paragraph (1) of 15(6) above, the Commission concluded that none of the contending groups of carriers had been operated either more or less efficiently than another, and as to paragraph (3) of 15(6) above, that there are no differences in importance to the public of the services of the three groups of carriers.

Section 8(b) of the Administrative Act. [5 U.S.C. § 1007(b)] provides in part:

"* * * The record shall show the ruling upon each such finding, conclusion, or exception presented. All decisions * * * shall become part of the record and include a statement of (1) findings and conclusions, as well as the reasons or

basis therefor, upon all the material issues of fact, law, or discretion presented on the record; and (2) the appropriate rule, order, sanction, relief, or denial thereof."

Section 7(c) of the Act [5 U.S.C. § 1006(c)] provides in part:

"Except as statutes otherwise provide, the proponent of a rule or order shall have the burden of proof."

Section 10(e) of the Act [5 U.S.C. § 1009 (e)] provides in part:

"(e) So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, * * * and determine the meaning or applicability of the terms of any agency action. It shall * * * (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to the requirements of sections 1006 and 1007 of this title or otherwise reviewed on the record of an agency hearing provided by statute; * * *."

The interpretation of Section 15(6) is the subject of the major dispute in the instant case. Plaintiffs urge that the Commission is required to consider and to make specific findings as to each of the five factors set forth in Section 15(6), enumerated above. Moreover, they urge that the Commission is further required, by the provisions of Section 15(6), and as well by Section 8(b) of the Administrative Procedure Act, to find:

(1) The dollar amount of revenue required by each individual carrier involved;

(2) The financial effect of the prescribed divisions on each individual carrier involved; that is, the extent to which the prescribed divisions will produce the dollar amount of revenue required by each individual carrier involved.

The "findings" made by the Commission following its report of March 21, 1963, are as follows:

"Findings

"1. We find that the present divisions of joint rates applicable to the transportation of property between points in eastern or official territory and points in transcontinental territory (including Montana) as between the complainants in No. 31503 (including the Missouri-Illinois Railroad Company) and in No. 31503 (Sub-Nos. 4 and 5), on the one hand, and the defendants in the said complaints, cross-complainants therein, and the complainants in No. 31503 (Sub-No. 1), on the other hand, are unjust, unreasonable, and inequitable.

"2. We find that just, reasonable, and equitable divisions in lieu of those referred to in finding 1 would be those set forth in appendix B hereto.

"3. We find that the present divisions of joint rates applicable to the transportation of property between points in midwestern territory, as herein defined, and points in transcontinental territory (including Montana), as herein defined, as between the complainants in No. 31503 (Sub-Nos. 1, 2 and 3) and the defendants and cross-complainants in the said complaints, are unjust, unreasonable, and inequitable.

"4. We find that just, reasonable, and equitable divisions in lieu of those referred to in finding 3 would be those set forth in Appendix C hereto.

"The hearing examiners' rulings on evidence are affirmed, for reasons stated in the recommended report.

"An appropriate order will be entered."

The Commission bases its conclusion that the Eastern and Midwestern lines should receive larger divisions of joint rates on the ratio of past revenues received from all services to total cost of services. Plaintiffs object to the Commission's method of determining costs because it failed to use certain adjustments suggested by plaintiffs in the Rail Form A formula used. The Commission used average costs of all freight traffic, not the costs of transcontinental freight here in issue. This, plaintiffs urge, is in violation of the Acts involved because the Commission failed to require Eastern and Midwestern lines to produce data in their sole possession showing their actual costs, and the Commission therefore failed to make required findings and conclusions, with respect thereto, supported by substantial evidence. Plaintiffs also contend the Commission refused to make essential findings and conclusions as to the reasonableness of the particular percentage divisions prescribed for Eastern lines and that the divisional scales prescribed for determining the divisions of Midwestern lines are not supported by "rational findings or substantial evidence."

With respect to the Commission's treatment of "revenue needs", plaintiffs say it disregarded *passenger deficits* and treated Mountain-Pacific roads "as freight carriers", whereas Section 15(6) requires revenue needs be determined with respect to *all* transportation services, and that no findings were made in support of excluding passenger deficit in determining revenue needs, in violation of Section 8(b) of the Administrative Procedure Act.

The parties appear to agree that the prescribing of divisions involves the exercise of judgment and that the Commission shall have broad discretion in the exercise of its judgment, that it need not specify the "weight" it attributes to various items of evidence and that its evaluation of the importance of the various factors is peculiarly within the purview of the Commission. See Boston & Maine Railroad v. United States, 208 F. Supp. 661,(D.C.Mass.1962), affirmed 371 U.S. 26, 83 S.Ct. 117, 9 L.Ed.2d 95. At page 670 of 208 F.Supp., the court states:

"The Supreme Court in Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, has interpreted section 1009(e) to require affirmance of the findings of an administrative agency if, taking the record as a whole, they are supported by substantial evidence, that is, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' It has further been held that the Administrative Procedure Act has not altered the rule of administrative finality. (Citing cases) The courts will not examine the findings of fact further than to determine whether there was substantial evidence to sustain them. (Citing cases) If the evidence was substantial, then the Commission alone is authorized to decide upon its weight or the significance of the facts. Baltimore & Ohio R. Co. v. United States, 1936, 298 U.S. 349, 358, 56 S.Ct. 797, 80 L.Ed. 1209. The Commission's order is the product of expert judgment which carries a presumption of validity. 'And he who would upset the * * * order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences.' (Citing cases.) The administrative body was created for the purpose of using its judgment and its knowledge. (Citing cases.)"

The court goes on to observe that the "expertise" of the Commission is not sufficient by itself but that findings supported by substantial evidence are required. In commenting on the function of the court, it is stated at page 671 of the opinion:

"The function of the court is to review the administrative action, not to determine whether the 'court on

the evidence would have reached the same result as did the Commission.' (Citing cases.) The judicial function is exhausted when there is found to be a rational basis for the conclusion approved by the administrative body. (Citing cases.)"

The court also observes at page 671:

"It is to be noted that the Commission 'is required to make not only findings that support its decision * * * but also findings that are intelligible and complete.' Concurring Opinion of Mr. Justice Douglas in United States v. Drum, [368 U.S. 370] 82 S.Ct. 408 [7 L.Ed. 2d 360], Jan. 15, 1962."

Mississippi River Fuel Corp. v. F.P.C., 82 U.S.App.D.C. 208, 163 F.2d 433 (1947), was a rate case before the Federal Power Commission on a petition to review and set aside its order. The court, after stating at page 439:

"The Commission has wide power in the selection of formulae for the ascertainment of costs."

and

"It is not the function of the courts to select formulae in these matters."

observes:

"The Congressional provisions extend to complicated, difficult matters as well as to simple questions. The courts cannot evade their responsibility merely because the subject matter is obscure. And neither can they be required to probe the minds of the agency for unfound facts or unexpressed reasons. The coordination of the two functions of administrative discretion and judicial review requires that the facts upon which the discretion is exercised, and the reasons, be clearly and completely stated. When the matter is complicated, the necessity is greater."

■ There is no question but that whether the new divisions are just, reasonable and equitable is for the Commission, not for the Court. But it is equally clear that, in prescribing the divisions, the minimum duty of the Commission is to give due consideration to each of the five factors the Congress has listed in Section 15(6). Furthermore, although the Commission has broad discretion in the matters involved, such discretion can never serve as a substitute for the "findings and conclusions, as well as the reasons or basis therefor", required by Section 8(b) of the Administrative Procedure Act [5 U.S.C. § 1007(b)], or for the clarity of findings required by that Act.

Plaintiffs assert that Section 15(6) requires findings showing determination of revenue needs in terms of dollars as to *individual carriers* and consideration thereof in prescribing new divisions, whereas defendants contend the provisions of Section 15(6) require determination of revenue needs only as to the *carrier groups* and not individual carriers and that such needs may be in terms of rates of return and need not be determined dollarwise.

■ In considering what Congress intended by the provisions of Section 8(b), as to necessary findings and conclusions, this court concludes that it is not the duty of the court to evaluate each bit of evidence and determine whether the Commission has drawn the proper conclusion therefrom. In this case the court has reviewed the portions of the record cited by the parties as required by above noted Section 10(e). The Commissioners are experts and their stated opinions, as to facts where based on the evidence, are sufficient to support their findings. Whether there is sufficient evidence for the Commission to arrive at the costs of service, and the data and information and method used, is within the discretion of the Commission, absent an abuse thereof. [§ 10(e), 5 U.S.C. § 1009(e).]

It is to be noted that the Administrative Procedure Act was enacted in 1946 and that the reason for such legislation appears, as stated by Congressman Walter on the floor of the House [92 Congressional Record 5653 (1946)], to be to insure a determination by the Com--

mission in a rate case of the issues of law, fact and discretion, and that "the mere parroting of findings or conclusions in the words of the statutes, however sufficient that may be as an ultimate conclusion, definitely would not satisfy in any manner the requirement of this Section unless both the statute and issue were very narrow indeed." The United States Supreme Court in Burlington Truck Lines v. United States, 37 U.S. 156 at 167, 83 S.Ct. 239 at 245, 9 L.Ed.2d 207, states:

> "Expert discretion is the lifeblood of the administrative process, but 'unless we make the requirements for administrative action strict and demanding, *expertise,* the strength of modern government, can become a monster which rules with no practical limits on its discretion.' New York v. United States, 342 U.S. 882, 884 [72 S.Ct. 152, 153, 96 L.Ed. 662] (dissenting opinion). 'Congress did not purport to transfer its legislative power to the unbounded discretion of the regulatory body.' Federal Communications Comm'n v. RCA Communications, Inc., 346 U.S. 86, 90 [73 S.Ct. 998, 1002, 97 L.Ed. 1470]. The Commission must exercise its discretion under § 207(a) within the bounds expressed by the standard of 'public convenience and necessity.' Compare id., at 91 [73 S.Ct. at 1002, 97 L.Ed. 1470]. And for the courts to determine whether the agency *has* done so, it must 'disclose the basis of its order' and 'give clear indication that it has exercised the discretion with which Congress has empowered it.' Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 197 [61 S.Ct. 845, 854, 85 L.Ed. 1271].

■■ As to the revenue needs of the carriers concerned, the Commission must of necessity, in order to comply with the Congressional mandate of Section 15(6), give due consideration to the amount required to pay their respective "operating expenses, taxes, and a fair return on their railway property held for and used in the service of transportation." Even though the Commission has broad discretion as to the facts it considers in arriving at conclusions as to the five requirements of Section 15(6), and in the evidence necessary to establish the factors deemed relevant in the making of new divisions, the law nonetheless demands that the new divisions be just and reasonable. And while the justness of the divisions is for the Commission in the first instance, the Court must be able to determine from the findings, conclusions, and orders of the Commission, whether the mandate of the statute involved has been met. It appears to the Court that, as to this particular factor, the mandate of Section 15(6) requires a finding in terms of dollars ("amount"), and that the Commission must also find the dollar amount of return to the carriers resulting from the new divisions, in order to arrive at the required determination as to whether the new divisions are "just, reasonable and equitable"; and to enable this Court to review the adequacy of the findings to support the Commission's determination.

Regarding the need to make findings of the financial effect of the divisions, see Chicago, Milwaukee, St. P. & P. Railway Co. v. State of Illinois, 355 U.S. 300 at 309–310, footnote 8, 78 S.Ct. 304, 2 L. Ed.2d 292 (1958), where the United States Supreme Court, in affirming an order of the District Court remanding the case to the Commission for further findings, said in footnote 8, pages 309–310, 78 S.Ct. page 310:

> "It is axiomatic that to know whether something is a fair proportionate part of something else, we must be told what the something else is."

This court does not conclude it is required to determine what evidence the Commission must consider and weigh in complying with each requirement for the prescribing of new divisions, nor has the court the power to substitute its fact appraisal for that of the Commission, but once the necessary factors are determined there must be findings which disclose that

the financial effect of any new divisions as to each carrier involved has been considered by the Commission in order that any reviewing court may be enabled to determine if the statutory requirements have been met by the Commission.

The issue of whether the Commission, in prescribing new divisions, must, pursuant to the provisions of Section 15(6), consider their effect on the individual carriers involved or only the groups of carriers concerned is one of major importance. The defendants urge that the Commission need only consider the justness of divisions as between the groups and that the equitable *subdivision* of the primary division of transcontinental freight revenues as between the lines in each group is not the concern of the Commission at this time but that any carrier who may not receive a fair share under the subdivisions made as between the carriers in a group may in due time take its case to the Commission. Plaintiffs contend that the Commission, in determining the divisions between the groups, must consider the effect on the individual carriers. As noted above, Section 15(6) requires the finding of the amount of revenue required to pay operating expenses, and so forth, "of such carriers."

The case of Atchison, Topeka and Santa Fe et al. v. United States et al., 225 F.Supp. 584 (D.C.Colo.1964), concerned an order of the Commission establishing divisions of joint rates for railroad freight in eastern-transcontinental inter-territorial traffic. The District Court held that the Commission improperly found presently existing divisions to be unlawful and that the new divisions established by the Commission were unlawfully prescribed. The case was remanded for proceedings consistent with the opinion. The court states, at page 606:

"From the general tone of the Commission's report, it cannot be concluded that the Commission did consider substantial evidence of revenue needs of *all* the parties, either as groups or as individuals, for the report shows only a consideration of the revenue needs of the eastern lines, and even then not all of the eastern lines' needs were in evidence on an individual basis. Since the 28277 scale principally affects those lines with shorter movements in Official territory, it would not be unreasonable to require the Commission to show some evidence of the revenue needs of these lines; and some indication that the Commission considered the principal effect of the 28277 schedule on particular transcontinental lines."

In holding the Commission failed to observe the standards of Section 15(6) in making its findings, the court says at page 607:

"We think that the requirement should not be relaxed here, for the necessity for us to determine whether the Commission exercised its discretion within the bounds of 'due consideration to efficiency, revenue needs, public interest, and any other facts entitling one carrier to a greater or less proportion of a joint rate, is as great under Section 15(6) as it is to determine the bounds of 'public convenience and necessity' under Section 207(a)."

The "typical evidence rule" was considered at length by the court in the Santa Fe case, supra. After noting the evidence before the court in the New England Divisions Cases, (Akron, C. & Y. R. Co. v. United States) 261 U.S. 184, 43 S.Ct. 270, 67 L.Ed. 605 [66 I.C.C. 196 at 201], the court, in the Santa Fe case, states at page 591 of 225 F.Supp.:

"It goes without saying that the Commission was not obligated to consider every last rate and division of every carrier; but it was obliged to do something more than consider the aggregate impact on the groups of railroads of a given formula for dividing joint rates as between the groups."

Thereafter the court quotes from the opinion in the New England Divisions Cases re the requirements of the typical.

evidence rule and then states the rule at page 592, as follows:

"The Commission is merely required to have before it, and to consider, and to some extent to rely on representative evidence relating to particular rates and divisions of particular carriers; but, even when the evidence is based merely on a representative sample of all relevant traffic moving during a certain period, it must relate to particular rates and divisions of particular carriers. Obviously, evidence which is based on all traffic moving during a certain period must also relate to particular rates and divisions of particular carriers."

The typical evidence rule does not operate to excuse failure to find that the divisions are just, reasonable and equitable not only between the groups of carriers involved but also as to each individual carrier in each division. Referring again to the Santa Fe case, supra, the court, at page 595, in speaking of the use of aggregate data, states:

"Before it relies on average or aggregate data, the Commission must make sure that the divisions formula under consideration (although seemingly just and equitable when viewed in terms of its impact on a group of railroads as a group) has not been constructed in such a way that its impact on any particular division of any particular rate as applied to any particular carrier is unjust."

Further, at page 596, quoting from Beaumont, etc., Ry. Co. v. United States, 36 F.2d 789 (D.C.Mo.1929), affirmed 282 U.S. 74, 51 S.Ct. 1, 75 L.Ed. 221:

" 'But it need not under all circumstances take specific evidence as to each rate of every carrier. When considering divisions of numerous joint rates applicable to traffic passing through gateways between different territories, the Commission may make the required determinations and establish the bases for divisions between groups of carriers

in the respective territories upon evidence which it reasonably may deem typical and to have sufficient probative weight to *justify the necessary findings and the order in respect of each rate.*' "

Continuing at page 597:

"The defendants' suggestion that the requirements imposed by the typical evidence rule no longer obtain is unwarranted. It is said that the decision of the Supreme Court in the case of Baltimore & Ohio R. Co. v. United States, 298 U.S. 349, 56 S. Ct. 797, 80 L.Ed. 1209 (1936) has vitiated the requirement that evidence representative of particular divisions of particular rates of particular carriers must be considered by the Commission in a divisions case. Such a contention is without merit."

The case of Baltimore & Ohio R. Co. v. United States, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209, is discussed by the court in Atchison, Topeka and Santa Fe et al. v. United States, 225 F.Supp. 584, supra, at some length. At page 598 it observes that the issue in the Baltimore & Ohio case before the Supreme Court was whether the divisions and rates established by the Commission were confiscatory, pointing out, however, at page 598 of its opinion:

"In the proceeding before the Commission, however, there was no issue with respect to whether or not the level of the rates established was confiscatory."

At page 599, the Colorado court, after quoting from the opinion in the Baltimore & Ohio case, says:

"It is, rather, the Commission's function to examine the divisions of rates which currently obtain (assuming them to be nonconfiscatory) and determine, from an examination of the particular divisions of the particular rates in question between particular carriers, whether the division is, in the broadest sense, 'fair.' B & O, whatever else it stands for,

certainly does not stand for the proposition that the Commission, in prescribing divisions of joint rates, need not take notice of what those rates are."

True, the court there was focusing on the determination of the unlawfulness of the *present* divisions but it is reasonable to assume that the same rules would apply in determining the fairness of new divisions. We are to have in mind, in the case at bar, that the divisions of joint rates are concerned and not the determination or the propriety of the amount of the joint rates involved. At page 599, the court, in the Santa Fe case, continues:

"Moreover, there is no substantial showing that the Commission had considered evidence of any specific rates and divisions."

After observing that there may have been "data respecting the particular rates applicable to carriers who are here parties plaintiff * * * available to the Commission", the court says that that data was pre-war and there was no reason to assume that that information had "any great bearing" on the present divisions of "particular rates" applicable to the transcontinental western lines who were parties plaintiff to the action and that there was no statement by the Commission that it did consider the evidence, and on page 600 the court observes:

"To the contrary, there is a statement, a wholly erroneous conclusion of law, that it was not obliged to consider any evidence showing specific rates. In light of the absence of the one statement and the presence of the other, we are not warranted in assuming that the Commission did consider such evidence. * * * In the aggregate the impact of the 500–A schedule may indeed be unjust, but the Commission has not made the required comparison of aggregate traffic evidence leading to that conclusion with evidence representative of particular divisions of particular rates which would warrant our endorsement of the action which the Commission has taken in declaring the 500–A schedule unlawful."

Defendants point out that the New England Divisions Cases, 261 U.S. 184, pages 201–202, 43 S.Ct. 270, 67 L.Ed. 605 (1923), hold that the Commission's divisions are not invalid unless they prescribe the proportion to be received by each of the connecting carriers. This ruling shows that subdivisions of primary divisions need not be made "[i]f the real controversy is merely how much of the joint rate shall go to carriers east of the Hudson river and how much to carriers west * * *" (page 202, 43 S.Ct. page 277, New England Divisions Cases), but the case does not hold that the needs of individual carriers need not be considered in determining the primary divisions involved. This same conclusion may be said to apply with respect to the rulings of the United States Supreme Court in United States v. Abilene & Southern R. Co., 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016 (1924), and Beaumont, S. L. & W. R. Co. v. United States, 282 U.S. 74, 51 S.Ct. 1, 75 L.Ed. 221 (1930).

There is always the question of just how much reason the Commission must set forth in support of its methods of determining necessary elements involved. The reviewing court must satisfy itself that the bricks (elements) which go into the structure, to wit, the Commission's divisions, are in such form that the court can ascertain whether the bricks used are those required by law. This fact is recognized by the statutory requirements and cases discussed hereinabove, and the necessity of findings as to the revenue needs of and the financial effect of the new divisions on each carrier involved appears to the court to be well established.

Justice Cardozo, in setting aside an order of the Commission in United States v. Chicago, M. St. P. and P. R. Co., 294 U.S. 499 at 510–511, 55 S.Ct. 462, at

467, 79 L.Ed. 1023 (1935), expressed the standard of judicial review as follows:

> "We would not be understood as saying that there do not lurk in this report phrases or sentences suggestive of a different meaning. * * * The difficulty is that it has not said so with the simplicity and clearness through which a halting impression ripens into reasonable certitude. In the end we are left to spell out, to argue, to choose between conflicting inferences. Something more precise is requisite in the quasi jurisdictional findings of an administrative agency. Beaumont, S. L. & W. Ry. Co. v. United States, 282 U.S. 74, 86 [51 S.Ct. 1, 75 L.Ed. 221]; Florida v. United States, 282 U.S. 194, 215 [51 S.Ct. 119, 75 L.Ed. 291]. We must know what a decision means before the duty becomes ours to say whether it is right or wrong."

■ Plaintiffs' contentions re unlawfulness of the findings, and failure to make findings in many instances, concern matters as to which the Commission has used what this court believes to be the particular *method* adopted by the Commission in its discretion, as a body of experts, in the determination of factors or elements of factors it is required by the statute to consider. Specific findings of the propriety of the use of information which the Commission, as experts in this field, considers to be sufficient and adequate re pertinent elements are not necessary. To require same would be to compel the Commission to justify each method and all facts considered in arriving at every factor involved in the making of new divisions. We hold this would exceed the requirements of Section 8(b) of the Administrative Procedure Act. The economic regulation of business is not susceptible of the same degree of definiteness as commercial law. Once the required factors are determined by the Commission, it must, however, apply them in a realistic fashion in drawing its conclusions as to just, reasonable and equitable divisions.

■ Defendants take the position that the Denver & Rio Grande, Missouri-Kansas-Texas and St. Louis-San Francisco Railroads have waived any objections to losses resulting from the new divisions. The court concludes that there has been no intentional relinquishment of a known right on the part of any of these roads and that none of them waived any right to object to losses resulting to them from the new divisions.

■ Divisions in general, defendants urge, are made on the basis of "rate of return" figures which are equivalent to divisions in terms of dollars. The court concludes that divisions in rates of return are not equivalent to divisions in terms of dollars and that divisions so stated do not satisfy the requirements of the statutes involved, as they do not disclose a determination or consideration of all the required elements in arriving at what the Commission concludes are just, reasonable and equitable divisions. The court further concludes that to comply with the provisions of the sections of the Interstate Commerce and the Administrative Procedure Acts, cited and discussed hereinabove, the Commission is required to make affirmative findings which disclose that the requirements of Section 15(6) have been met and the factors therein required have been determined and considered, not only as to the groups of roads involved but with respect to each carrier affected in said groups; that findings must be made as to the amount of revenue, in terms of dollars, required by the respective carriers affected in any new divisions prescribed, the financial effect of the Commission's orders in terms of dollars as to the carriers and the extent to which the new divisions prescribed will produce the revenue found to be required; that the findings show that in the prescribing of just and reasonable divisions the Commission has considered how said divisions affect the individual carriers with respect to the factors required to be determined by

Section 15(6); and that the findings further show that, as required by Section 15(6), the Commission has considered the revenue needs of the carriers for *all* transportation services, including needs represented by passenger deficits.

The court has discussed a majority of issues 1 to 19 of the 30 issues involved, as submitted by the parties, and in view of the conclusions reached it is unnecessary to discuss issues 20 to 30. However, no inference is to be drawn that the court is of the opinion that the issues 20 to 30, or any other numbered issues not discussed in this opinion, are of the nature it would be required to decide should they be raised at some future time.

By reason of the insufficiency of the Commission's findings and conclusions, as stated above, the Commission's orders of March 21, 1963, as amended, and December 31, 1963, will be set aside, and the cause will be remanded to the Commission for further proceedings consistent with this opinion.

Any order which might hereafter be made by the Commission in the proceedings under review or new proceedings would be subject to challenge and to injunctive relief if the Commission failed to act in accord with the statutory requirements. Cantlay & Tanzola v. United States, 115 F.Supp. 72 at 84 (D.C.S.C.Cal.1953), and 28 U.S.C., Sections 1336, 2284, 2324 and 2325. In the circumstances, the matter of injunctive relief herein becomes moot.

This opinion shall serve as Findings of Fact and Conclusions of Law to the extent required by Rule 52(a), F.R. Civ.P.

Counsel for the plaintiffs are requested to submit Judgment setting aside the Commission's orders and remanding the cause to the Commission for further proceedings. This memorandum opinion is not a final Judgment.